(140 App. Div. 372.)

### RICHARDSON v. TANNER.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. NEW TRIAL (§ 108*)—GROUNDS—NEWLY DISCOVERED EVIDENCE.

　　Where, in an action for attorney's services, the genuineness of the only writing purporting to have been signed and acknowledged by the client was questioned by him, and the writing was the sole evidence, apart from the testimony of interested witnesses, as to the client's knowledge or ratification of what the attorney had done, and the client had no notice before the trial that the writing was in existence and would be relied on, he was entitled to a new trial on the ground of newly discovered evidence, consisting of the testimony of the notary public taking the acknowledgment that the client was not the person who signed and acknowledged the writing.

　　[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. § 108.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EVIDENCE (§ 174*)—SECONDARY EVIDENCE—ADMISSIBILITY.
        Where an original letter was in existence, and no good reason for sec-
    ondary evidence thereof was shown, it was error to receive in evidence
    without authentication a copy of the letter.
        [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 561–564, 566–
    569; Dec. Dig. § 174.*]

Appeal from Trial Term, New York County.

Action by Howard W. Richardson against Dayton P. Tanner.
From a judgment for plaintiff, and from an order denying a new trial
on the ground of newly discovered evidence, defendant appeals. Re-
versed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN,
LAUGHLIN, MILLER, and DOWLING, JJ.

L. E. Warren, for appellant.
Paris S. Russell, for respondent.

DOWLING, J. Defendant appeals from a judgment entered upon
the verdict of a jury in favor of plaintiff in the sum of $2,252, and
from an order denying motion for a new trial upon the ground of
newly discovered evidence.

Plaintiff's assignor, one John C. Gittings, an attorney at law resid-
ing at Washington, D. C., claimed to have been retained by defendant
to represent him in certain criminal proceedings in that city, and to
have performed services under such retainer for which defendant
agreed to pay the sum of $2,000. Prior to meeting the defendant
Tanner, Gittings had dealings with one Hennig, who is claimed to
have been a representative of Tanner and Homans, both of whom had
been arrested in the District of Columbia, charged with a common-
law conspiracy to obtain $5,000 from a Dr. Kemp, of Washington;
an additional charge of carrying a dangerous weapon having been
made against Tanner, from which latter charge he was finally dis-
charged on payment of a fine of $100. Hennig requested Gittings to
act as attorney for both Tanner and Homans, and gave him the de-
tails of the charge against them in the presence of both the accused,
who, it is claimed, requested him to go ahead and do what he could
to prevent the finding of any indictment and to report his actions in
the matter to Hennig. Although Gittings called upon the district at-
torney several times, an indictment was found on March 25, 1907,
copies of which were sent to Hennig, and Tanner and Homans ap-
peared and pleaded not guilty. Thereafter Gittings appeared and filed
a demurrer to the indictment, and also arranged with the corporation
counsel for the acceptance of the fine of $100 heretofore referred to.
After correspondence and interviews between Gittings and Hennig,
the former finally met Tanner and Homans in New York, and dis-
cussed with them the entire situation of the charges against them.
Gittings then told Tanner that his fee for all his services in the mat-
ter would be $2,500, on account of which he had received in all $500,
which appears to have been paid directly by Hennig, although it is
claimed that Tanner had furnished him with funds. Then followed
what seems to be the clearest and most direct statement of Gittings'

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claim of the agreement between him and defendant. Both Tanner and Homans, according to him, said they wanted him to stay in the case, that they did not care anything about the money, but he was to go ahead and do what he could to prevent the case coming to trial. Then Gittings testified that he said:

"Gentlemen, I don't know whether I can accomplish anything for you in this case or not; but I will do this: If I can get this case so arranged with the district attorney that you will not be required to come there and stand trial—in other words, it would be pigeonholed, by some sort of agreement with the court and the district attorney—why then you can pay me $2,000. Mr. Homans then turned around and said, 'Mr. Tanner, is that agreeable to you?' He did not use 'Mr. Tanner.' He called him 'Dave' or whatever it was—some name I don't just recall now. 'Will that be agreeable to you?' and he said, 'Yes; it will be perfectly agreeable to me.'"

Gittings claims to have expressly repudiated any use of influence with the district attorney, with whom he had formerly been associated in the practice of law, in his negotiations on behalf of his clients. He claims to have had consultations with the district attorney, with the police department, with the attorney's office, and with a judge of the criminal court, as the result of which an agreement was reached with the district attorney by which the demurrer was to be overruled and the indictment never brought on for trial so long as the accused remained out of the District of Columbia. The district attorney is claimed to have further agreed on behalf of his successor in office that the arrangement thus made would be observed. This plan was carried into operation, according to Gittings' testimony, by means suggested by him to the judge and district attorney and approved by them, which consisted in getting from Tanner and Homans a power of attorney authorizing the overruling of their demurrer, the writing of some kind of a letter by Gittings to the district attorney, some sort of a reply from the latter, and the pinning of their correspondence to the files in the latter's office. This procedure is claimed to insure to the defendants immunity from prosecution as long as they remain outside the District of Columbia. The power of attorney thus became a most important element in the case; for, if genuine, it furnished conclusive proof of knowledge on the part of Tanner and Homans of what was being done on their behalf by Gittings, and was an authorization to him to act as their attorney. It was couched in the following terms:

"In the Supreme Court of the District of Columbia.

"United States v. Frank S. Homans and David P. Tanner, Defendants.

"City Niagara Falls, Niagara County, State of New York.

"Power of Attorney in Fact.

"We, Frank S. Homans and David P. Tanner, defendants in the above-entitled case, do hereby empower, authorize, and direct John C. Gittings, attorney at law, in Washington, D. C., to act as attorney in fact in the above case, and to do any and all acts and things that must or may be done by either of us in our name, place, and stead. And it being represented to us that if we will consent to an order of court overruling the demurrer and enter pleas in the case that no further action will be taken against us, provided we agree to remain out of the jurisdiction of the said court, we therefore do hereby particularly and specifically authorize, empower, and direct said Git-

tings to go in to open court and consent to an order of the court to be made overruling the demurrer (sic) heretofore filed by us and to enter such pleas thereafter in our name and stead and in our behalf as he may think in his best judgment are proper; and said Gittings is hereby expressly authorized and empowered to sign our names to any and all papers in relation to said case as he may deem proper towards the carrying out of the premises.

"In witness whereof we have hereunto set our hands and affixed our seal this 24th day of August, 1907. Frank S. Homans. [Seal.]
"David P. Tanner. [Seal.]

"Personally appeared before me, a notary, Frank S. Homans and David P. Tanner, and acknowledged the aforegoing (sic) instrument to be their act and deed. Harrison Granger,
"Notary Public in and for Niagara Co., State of N. Y.
"Official character on file Pension Bureau, Washington, D. C."

This paper was inclosed in a printed back bearing the names of "Gittings & Chamberlain, Attorneys and Counselors at Law, 482 Louisiana Avenue, Washington, D. C." It was produced by plaintiff herein, and bears no file marks of any kind from any public office. Defendant denied that he had ever signed this paper. It was presented by Gittings to the court in Washington as the basis of the alleged action had there, and, of course, he represented it as the genuine act of Homans and Tanner. It was the only writing claimed to have been signed by Tanner, and the sole evidence, apart from the testimony of interested witnesses, bearing directly upon the defendant's knowledge or ratification of what transpired at Washington. The jury were expressly charged that, if this were a forged instrument, they would be entitled to consider that fact in connection with the question whether Gittings performed the services he undertook to perform; and that—

"if the defendant never agreed to assent to a plan whereby he was to have the matter closed up in the way it was closed up, without a trial and upon condition that he was to be exiled from Washington, then, of course, the plaintiff's assignor, the lawyer, never performed his part of the agreement, because he still stands with an indictment over him."

After the jury had found for plaintiff, a motion was duly made for a new trial upon the ground of newly discovered evidence, which was that of Harrison Granger, the notary public whose name was signed to the power of attorney, who made affidavit that defendant was not the person who appeared and made acknowledgment of its execution, but that the person who accompanied Homans before the notary and was introduced by the former to the latter as Tanner was another person than the defendant. Defendant had no notice before the trial of this action that such a paper was relied upon or was in existence, and was without an opportunity of meeting this proof by producing Granger, whose testimony, if true, would entirely destroy the effect of defendant's supposed execution of the power. In view of the importance of the testimony sought to be introduced, and there being no question of laches, nor any claim that the new evidence was known to defendant at the time of the trial, the motion for a new trial should have been granted.

Attention may be called as well to the fact that it was error to receive in evidence, without authentication of any kind, a copy of the letter from Gittings to the district attorney, which was claimed to

have been filed in the latter's office. The original was in existence, and no good reason was given for secondary evidence thereof. Nor did it appear that Gittings had actually performed the agreement he claimed to have made, and upon which his compensation was dependent, viz., to have the indictment "pigeon-holed" by some agreement with the court and the district attorney. And while it may well be that an attorney is entitled to recover for the services rendered to his client, whether they result in his conviction, in his acquittal, in the acceptance of a plea of guilty to some degree of crime, in the suspension of sentence upon him, or, in states where the procedure is recognized, in the entry of a nolle prosequi, yet those services are all performed with the end in view of an open and judicial determination of the charges against a defendant, and differ widely in their character from such as are directed to obtaining some secret concession, which results in suspending a criminal prosecution without any public action and without the intervention of the court. In the present state of the record, it is impossible to say within which class the services claimed to have been rendered herein may fall.

Judgment and order appealed from reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.